**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARTHA SCHILKE, both individually and as a representative of all other persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09-cv-1363 |
| WACHOVIA MORTGAGE, FSB f/k/a World Savings Bank, FSB, and AMERICAN SECURITY INSURANCE, INC., | ) ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This putative class action arises out of a home mortgage loan that Plaintiff Martha Schilke obtained from World Savings Bank FSB, now known as Wachovia Mortgage FSB ("Wachovia"), and the subsequent purchase of hazard insurance for the mortgaged property by Wachovia from American Security Insurance Company ("ASI"). On March 29, 2009, Plaintiff filed a first amended class action complaint alleging various state law claims against Defendants Wachovia and ASI based on the premiums that she was charged for the lender placed insurance. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. Before the Court are Wachovia's motion to dismiss [29] and ASI's motion to dismiss [27]. For the reasons stated below, Wachovia's motion to dismiss [29] is granted and ASI's motion to dismiss [27] is granted.

# I.    Background[1]

In March 2006, Schilke entered into a home mortgage loan with World Savings Bank FSB, which is now Wachovia.  Cmplt. ¶¶ 23, 25.  The mortgage agreement required Schilke to maintain hazard insurance for the mortgaged property.  Cmplt. ¶ 29.  The mortgage further provided that if Schilke failed to maintain hazard insurance, Wachovia could "do and pay for whatever it deems reasonable or appropriate to protect [its] rights in the Property," including "purchasing [the] insurance required."  Ex. 1 to Cmplt. at ¶ 7.  The mortgage expressly advised Schilke that insurance purchased by Wachovia "may cost more and provide less coverage than the insurance [plaintiff] might purchase."  *Id.*

Schilke contracted to purchase hazard insurance for the mortgaged property through Grange Mutual Insurance on January 1, 2008.  Cmplt. ¶ 29.  Schilke paid a premium of $841 for the Grange insurance policy, which had a $500 deductible.  Cmplt. ¶ 30.

On May 9, 2008, Wachovia set Schilke a letter requesting insurance information for the property. Cmplt. ¶ 31.  The letter requested proof of insurance within 14 days, explained that "[f]ailure to provide this information may result in a policy being purchased by us at your expense to protect our interest," and advised Schilke that the policy Wachovia would purchase would have a premium of $2,034.  Ex. D to [31].[2]  The letter advised that Schilke's monthly

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint.  See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  The Court also considers the documents that Plaintiff attached to her first amended complaint, see FED. R. CIV. P. 10(c), and "[d]ocuments that a defendant attaches to a motion to dismiss * * * if they are referred to in the plaintiff's complaint[,] are central to her claim," *Venture Associates v. Zenith Data Systems,* 987 F.2d 429, 431 (7th Cir.1993), and are "concededly authentic," *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

[2] The Court will consider the May 9th letter, despite the fact that it is not attached to Plaintiff's complaint, because it is referred to in the first amended complaint, is central to Plaintiff's claims (which are based in part on the allegation that Defendants misrepresented the nature of the insurance premium), and Plaintiff does not object to its authenticity.

mortgage payment would be adjusted to cover the cost of the insurance and disclosed that the "premium may include compensation to the insurer and Wachovia Mortgage." *Id.*

On July 18, 2008, Wachovia sent Schilke a letter notifying her that it had purchased insurance from ASI with an annual premium of $2,034. Cmplt. ¶ 32. The letter advised Schilke that "[t]he cost of this policy is probably greater than the cost of comparable coverage obtained through your own insurance agency" and that "[t]he costs may include compensation to the Insurer and Wachovia Mortgage." Ex. F to [31].[3] The ASI policy covered Schilke for a smaller loss than did her previous policy. Cmplt. ¶ 33. Schilke alleges that the insurance premium that she was charged for the ASI policy included undisclosed fees – which Schilke terms "kickbacks" – paid to Defendants for the placement, maintenance, and servicing of the insurance. Cmplt. ¶¶ 37, 40, 45. Schilke alleges that she "could not know that the amounts being billed as 'insurance premiums' were not, in fact, the true cost of the actual insurance coverage." Cmplt. ¶ 52.

Schilke asserts claims against both Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") (Counts I and V), common law fraud (Counts II and VI), conversion (Counts III and VII), and unjust enrichment (Counts IV and VIII).

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

---

[3] The first page of the July 18th letter is attached as exhibit 3 to Plaintiff's complaint, and is attached in its entirety to Wachovia's motion to dismiss. The Court will consider the entirety of the letter because it is referred to in the first amended complaint, is central to Plaintiff's claims (which are based in part on the allegation that Defendants misrepresented the nature of the insurance premium), and Plaintiff does not object to its authenticity.

the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Claims Against Wachovia

#### 1. Preemption

Wachovia contends that all of Plaintiff's claims against it are expressly preempted by the Home Owners Loan Act, 12 U.S.C. §§ 1461 *et seq*. ("HOLA") and the implementing regulations promulgated by the Office of Thrift Supervision ("OTS"), 12 C.F.R. §§ 560.1 *et seq*. Enacted in 1933, the "HOLA empowered [the OTS] to authorize the creation of federal savings and loan

associations, to regulate them, and by its regulations to preempt conflicting state law." *In re Ocwen Loan Servicing, LLC*, 491 F.3d 638, 641-42 (7th Cir. 2007). Noting that "[t]he broad language of [the HOLA] expresses no limits on the [OTS's] authority to regulate the lending practices of federal savings and loans," the Supreme Court has stated that "'[i]t would have been difficult for Congress to give the [OTS] a broader mandate.'" *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 161 (1982) (citation omitted).

Pursuant to that mandate, the OTS has promulgated two regulations that address preemption: 12 C.F.R. §§ 545.2 and 560.2. Section 545.2 expresses the general principles that the OTS has "plenary and exclusive authority * * * to regulate all aspects of the operations of Federal savings associations," and that its "authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association." 12 C.F.R. § 545.2. Section 560.2 provides more specific guidance on the types of state laws that are expressly preempted. Section 560.2(a) states, in pertinent part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section * * *.

12 C.F.R. § 560.2(a). Subsection (b) of the regulation provides a list of "illustrative examples" of "the types of state laws preempted by paragraph (a)," including state laws purporting to impose requirements regarding:

> (1) Licensing, registration, filings, or reports by creditors;
>
> (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;
>
> (3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and

(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.

12 C.F.R. § 560.2(b). Subsection (c) provides the following list of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations":

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. § 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c).  Thus, as one court of appeals has put it, "§ 560.2(a) preempts state laws that have a direct impact on the banking and lending activities of a federal savings association, such as those listed in § 560.2(b), while § 560.2(c) preserves state laws of general applicability that only incidentally affect the banking and lending activities of a federal savings association." *State Farm Bank v. Reardon*, 539 F.3d 336, 343 (6th Cir. 2008).

In *Ocwen*, the Seventh Circuit interpreted § 560.2 as giving the OTS "exclusive authority to regulate the savings and loan industry in the sense of fixing fees (including penalties), setting licensing requirements, prescribing certain terms in mortgages, establishing requirements for disclosure of credit information to customers, and setting standards for processing and servicing mortgages," but "no power to adjudicate disputes between the S & Ls and their customers."  491 F.3d at 643.  The Seventh Circuit also concluded that § 560.2 "does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies."  *Id.*  For example, the court explained that if an S & L were to sign a mortgage agreement with a homeowner and charge the homeowner a higher annual interest rate than that specified in the mortgage agreement, § 560.2 would not preempt a breach of contract claim by the homeowner.  *Id.* at 643-44.  Similarly, the court opined that § 560.2 would not preempt a mortgagor's fraud claim where the mortgagee fraudulently represents to the mortgagor that it will forgive a default, and then foreclosed.  *Id.* at 644.

Turning to the instant case, Plaintiff asserts ICFA, common law fraud, conversion, and unjust enrichment claims against Wachovia. Thus, Plaintiff invokes laws of general applicability, none of which purport, on their face, to regulate lending associations. However, the fact that Plaintiff's claims arise under laws of general applicability does not necessarily save them from preemption. See *Prince-Servance v. BankUnited, FSB*, 2007 WL 3254432, at *5 (N.D. Ill. Nov. 1, 2007) (rejecting the argument that § 560.2 does not preempt laws of general applicability). Indeed, courts have found ICFA, common law fraud, conversion, and unjust enrichment claims to be preempted by § 560.2 under certain circumstances. See *Moskowitz v. Wash. Mut. Bank*, 768 N.E.2d 262 (Ill. App. Ct. 1st Dist. 2002) (finding that under the ICFA to be preempted by § 560.2); *Ocwen*, 491 F.3d at 647 (recognizing that ICFA claim might be preempted); *Prince-Servance v. BankUnited, FSB*, 2007 WL 3254432, at *5 (N.D. Ill. Nov. 1, 2007) (ICFA claim preempted); *Naulty v. Greenpoint Mortgage Funding, Inc.*, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009) (finding plaintiff's state causes of action – including common law fraud claim – to be preempted by § 560.2); *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp. 2d 1048, 1054 (N.D. Cal. 2009) ("to the extent plaintiffs' * * * fraud, and conversion claims are based on allegations that the terms of plaintiffs' loan were unlawful and that plaintiffs did not receive sufficient disclosures about their mortgage, they are preempted by HOLA"); *Tombers v. F.D.I.C.*, 2009 WL 3170298, at *4 (S.D.N.Y. Sept. 30, 2009) (unjust enrichment claim preempted by § 560.2(b) where it was invoked in such a manner as to "'impose requirements regarding * * * loan-related fees' – an area that is expressly preempted by OTS regulation").

To determine whether Plaintiff's state law claims are preempted, the Court must consider "whether the [particular] conduct complained of falls within the scope of OTS' regulation."

*Prince-Servance*, 2007 WL 3254432, at *4; see also *Ocwen*, 491 F.3d at 646 (explaining that whether claims are preempted turns on "the specific conduct being charged"). Put differently, the question is whether the state law *as applied* would regulate lending activities of federal savings associations. See *Casey v. F.D.I.C.*, 583 F.3d 586, 595 (8th Cir. 2009) ("a state law that either on its face or as applied imposes requirements regarding the examples listed in § 560.2(b) is preempted"); *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (considering whether state laws were "as applied" the "type of state law listed under paragraph (b) of 12 C.F.R. § 560.2"); *Stefan v. Wachovia*, 2009 WL 4730904, *3 (N.D. Cal. Dec. 7, 2009) (to the extent that state tort and contract laws of general applicability "as applied, would regulate lending activities expressly contemplated by section 560.2(b), the claims are preempted"). Therefore, the Court's focus must be on "the functional effect upon lending operations of maintaining the [allegedly preempted] cause[s] of action," as opposed to "merely to the abstract nature of [those] cause[s] of action." *Naulty v. Greenpoint Mortgage Funding, Inc.*, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009).

All of Plaintiff's state law claims against Wachovia are premised – at least in part – on the allegation that Wachovia failed to disclose that the insurance premium that Plaintiff was charged for the ASI policy included fees paid to Wachovia for the placement, maintenance, and servicing of the insurance. *See* Cmplt. ¶ 85, Count I ("the kickbacks were not disclosed"); *id.* ¶ 87, Count I ("without disclosing the fact that these 'insurance premiums' included substantial kickbacks"); *id.* ¶ 92, Count II (Wachovia failed to disclose that the insurance premium "contained substantial kickbacks"); *id.* ¶ 94, Count II (Plaintiff was injured by paying insurance premiums that included "substantial undisclosed kickbacks"); *id.* ¶ 100, Count III (Wachovia converted Plaintiff's property by collecting "'insurance premiums' contain[ing] substantial

undisclosed kickbacks"); *id.* ¶ 106, Count IV (Wachovia has been unjustly enriched by collection of insurance premiums "as it failed to disclose * * * the substantial undisclosed 'commission'"). In effect, Plaintiff is seeking to use state laws to impose requirements on Wachovia's "ability * * * to require or obtain private mortgage insurance," 12 C.F.R. § 560.2(b)(2); its imposition of loan-related fees, *id.* § 560.2(b)(5); and its disclosure of loan terms, *id.* § 560.2(b)(9). Because each of these areas is within the exclusive purview of the federal laws, Plaintiff's state law claims are preempted to the extent that they are based on Wachovia's alleged failure to disclose the nature of the insurance premiums.

A court in this district reached the same conclusion on analogous facts in *Prince-Servance*. Like the case at bar, *Prince-Servance* involved the charging of undisclosed fees to a mortgagee. In *Prince-Servance*, the plaintiff entered a mortgage agreement with defendant BankUnited through a mortgage broker, defendant TME. TME arranged for a loan with a higher interest rate than the one for which the plaintiff qualified, and retained a portion of the up-charged interest rate called a yield spread premium ("YSP"). 2007 WL 3254432, at *2. Neither TME nor BankUnited disclosed to plaintiff the existence of the YSP, or that plaintiff was being charged a higher than necessary interest rate. Plaintiff filed suit against BankUnited and TME based on the undisclosed YSP. The court found that the plaintiff's ICFA and inducement to breach fiduciary duty claims against BankUnited were preempted both by § 560.2(b)(5), because the YSPs are loan-related fees, and § 560.2(b)(9), because the claims were based on BankUnited's alleged failure to disclose the YSP. *Id.* at *5. Similarly, here, to the extent that Plaintiff's claims are based on Wachovia's failure to disclose that the insurance premium included servicing and other fees, they are preempted.

Plaintiff relies heavily on *Gibson v. World S & L Assoc.*, 103 Cal.App.4th 1291 (Cal.

App. Ct. 2002) – a factually analogous case also involving lender purchased insurance – for her position that her claims are not preempted. In *Gibson*, the plaintiffs alleged that the defendant S&L violated California's unfair competition law by charging borrowers an insurance premium for lender purchased insurance that included not only the cost of the replacement hazard insurance, but also certain associated administrative costs. 103 Cal.App.4th at 1294-95. The *Gibson* court concluded that the plaintiff's claims were not preempted by § 560.2.

*Gibson* does not persuade the Court that Plaintiff's claims in this case survive for a number of reasons. First, the *Gibson* court construed the plaintiffs' claims as alleging the violation of the mortgage agreements, and as implicating the "duties to comply with contracts and the laws governing them and to refrain from misrepresentation." *Id.* at 1302-03. The court specifically noted that the plaintiffs did not claim that the lender had made insufficient disclosures regarding the insurance premiums, but that they had made false statements. *Id.* at 1305. By contrast, here, Plaintiff does not identify any term of the loan that Wachovia breached. Rather, her claims are based on allegations of insufficient disclosures. Moreover, recent California cases have called the continued validity of *Gibson* into question. See *Naulty*, 2009 WL 2870620, at *4; *Curcio v. Wachovia Mortg. Corp.*, 2009 WL 3320499 (S.D. Cal. Oct. 14, 2009). Finally, the *Gibson* court began its analysis with the "strong presumption" that § 560.2 does not preempt state law claims. 103 Cal.App.4th at 1300. However, in *Silvas*, the Ninth Circuit held that there is no presumption against preemption in the context of lending regulation of federal savings associations. 514 F.3d at 1004.

In addition to the allegations regarding Wachovia's alleged insufficient disclosures, the amended complaint also alleges that Wachovia made false representations – namely, that the amount Plaintiff was charged for the ASI insurance was the cost of the insurance, when in fact

Plaintiff also was charged for additional fees. *See* Cmplt. ¶ 42 (Wachovia "at all times represented that this was the actual premium amount [Plaintiff and the Class] owed for insurance coverage"); *id.* ¶ 43 ("misrepresenting the charges for insurance coverage as 'insurance premiums'"); *id.* ¶ 69(a) ("misrepresenting the nature of the charges imposed upon Plaintiff and the Class as an 'insurance premium'"). To the extent that Plaintiff's claims are based on alleged false representations by Wachovia, they may not be preempted. See *Ocwen*, 491 F.3d at 647 (common law fraud claim alleging falsely representations "probably is not preempted"). Here, however, Plaintiff's claims nevertheless fail because Plaintiff has not identified an actionable misrepresentation. Contrary to Plaintiff's allegations, Wachovia did not represent that the amount Plaintiff was charged for the ASI policy was the actual cost of the insurance coverage. Rather, in a letter dated May 9, 2008, Wachovia informed Plaintiff that "[f]ailure to provide [proof of insurance] may result in a policy being purchased by us at your expense to protect our interest," and that the "premium may include compensation to the insurer and Wachovia Mortgage." Ex. D to [31]. In addition, the July 18, 2008 letter notifying Plaintiff that Wachovia had purchased insurance from ASI stated that the cost of this policy "may include compensation to the Insurer and Wachovia Mortgage." Ex. F to [31]. Therefore, Wachovia's motion to dismiss [29] is granted.[4]

**B.    Claims Against ASI**

**1.    Filed Rate Doctrine**

In accordance with the Illinois Administrative Code, which requires that insurance rates be filed with the Illinois Department of Insurance ("DOI"), ASI filed the premium rates for the

---

[4] Wachovia also raises a number of other grounds for dismissal, which the Court need not address in light of its determination that all of Plaintiff's claims against Wachovia are preempted or otherwise fail to state a claim (as is the case, to the extent that Plaintiff's claims are based on alleged false representations by Wachovia).

policy purchased for Plaintiff by Wachovia with the DOI. Ill. Admin. Code tit. 50, §§ 754.10, 754.40.[5] ASI's filings set forth the formula used to calculate Plaintiff's premium, and explain that "commissions and brokerage fees" are part of the rate calculation. See Ex. A to [27]. ASI contends that, consequently, all of Plaintiff's claims against it are barred by the filed rate doctrine, which forbids courts from invalidating or modifying rates that have been filed with regulatory agencies. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000); *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001).

Underlying the filed rate doctrine is the principle that "any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18-19 (2d Cir. 1994). The filed rate doctrine serves two interests: (1) the prevention of price discrimination among rate payers, and (2) the preservation of the exclusive role of regulatory agencies to determine the reasonableness of rates, in light of courts' limited ability to do so. See *Fax Telecommunicaciones, Inc. v. AT&T*, 138 F.3d 479, 489 (2d Cir. 1998); *Arsberry*, 244 F.3d at 562 (the filed rate doctrine is based both on "historical antipathy to rate setting by courts" and on "a policy of forbidding price discrimination by public utilities and common carriers"); *Goldwasser*, 222 F.3d at 402 (filed rate doctrine is premised on the fact that "the courts' ability to determine the reasonableness of rates is limited; [and] that awarding damages to plaintiffs while leaving less litigious customers paying the filed rates would be discriminatory"). As noted above, and consistent with the doctrine's second purpose, the filed rate doctrine bars courts from altering filed rates. By extension, the filed rate doctrine also prohibits a court from awarding a

---

[5] The Court takes judicial notice of ASI's filings with the DOI, which ASI has submitted to the Court with its motion to dismiss. See Exs. A-C to [27]; *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (on a motion to dismiss, a court may consider judicially noticed documents, including documents contained in the public record).

plaintiff damages based on the difference between a filed rate and an allegedly lawful rate. The prohibition on such damages serves both of the doctrine's purposes. An award of such damages to the plaintiff would result in discrimination among customers, because it would effectively change the rate paid by the plaintiff to one below the filed rate paid by other customers. *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1316 (11th Cir. 2004); *Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424, 429 (4th Cir. 2004). Similarly, authorizing a court to award damages would "require the court to determine the lawful tariff," which "is not regarded as a proper judicial function," but rather as the exclusive role of the regulatory body. *Arsberry*, 244 F.3d at 562.

Before turning to Plaintiff's claims, the Court will address Plaintiff's threshold argument that the filed rate doctrine should not be applied in the context of property insurance because doing so will not serve the purposes of the doctrine. Numerous courts have held, contrary to Plaintiff's contention, that the filed rate doctrine applies to the insurance industry. See *Richardson v. Standard Guar. Ins. Co.*, 853 A.2d 955, 964 (N.J. Super. A.D. 2004) (holding that the filed rate doctrine applies to the insurance industry, and noting "the considerable weight of authority from other jurisdictions that have applied the filed rate doctrine to ratemaking in the insurance industry"); *Schermer v. State Farm Fire and Cas. Co.*, 702 N.W.2d 898, 907 (Minn. App. Ct. 2005) (collecting cases applying the filed rate doctrine to the insurance industry). Similarly, Illinois courts have applied the filed rate doctrine in the context of insurance. See *Anzinger v. Illinois State Medical Inter-Insurance Exchange*, 494 N.E.2d 655 (Ill. App. Ct. 1st Dist. 1986) (filed rate doctrine barred physicians' suit to recover premiums paid to insurance carrier before carrier's medical malpractice rates were held to be excessive); *Horwitz v. Bankers Life & Cas. Co.*, 745 N.E. 2d 591 (Ill. App. Ct. 1st Dist. 2001) (filed rate doctrine barred

insured's breach of contract and ICFA claims against insurer challenging the manner in which the insurer calculated health insurance premiums). Therefore, applying the filed rate doctrine in this case would be consistent with the weight of authority.[6]

Moreover, the dual interests motivating the filed rate doctrine also support the application of the doctrine in the context of insurance. According to Plaintiff, the first interest – the prevention of discrimination – would not be served here because insurance companies are permitted to discriminate among customers based on their risk level.[7] While insurance companies are not required to charge all customers the same rate, Illinois law does require insurers to charge a rate based on the rates and rules for applying rates filed with the DOI. Ill. Admin. Code tit. 50, §§ 754.10, 754.40. Therefore, like public utilities (to which Plaintiff concedes the filed rate doctrine applies), insurance companies cannot arbitrarily charge different rates to similarly situated customers. Here, Plaintiff seeks to avoid paying the portion of the insurance premium that went to Wachovia. In other words, Plaintiff seeks to pay a different rate than that filed by ASI and paid by all other insureds. The filed rate doctrine is designed to prevent precisely that discriminatory result.

The nonjusticiability strand of the filed rate doctrine also may be implicated by challenges to insurance premium rates because the DOI has the authority to regulate property

---

[6] Plaintiff correctly notes that some courts have refused to apply the filed rate doctrine in the context of insurance. See *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 394 (9th Cir. 1992); *Hanson v. Acceleration Life Ins. Co.*, 1999 WL 33283345 (D.N.D. 1999). However, as noted above, the weight of authority appears to go the other way. Furthermore, this is a diversity case governed by Illinois law. As such, it is this Court's duty to follow relevant state law precedent such as *Horwitz* and *Anzinger*. *Baltzell v. R & R Trucking Co.*, 554 F.3d 1124, 1130 (7th Cir. 2009) ("If there is no prevailing authority from [the Illinois Supreme Court], we give great weight to the holdings of the Illinois appellate courts" in diversity cases).

[7] Plaintiff also contends that the application of the filed rate doctrine is not appropriate here because the insurance industry is not monopolistic, but rather is competitive, such that there is no need to protect consumers from discriminatory treatment. However, an Illinois court rejected that argument. *Horwitz*, 745 N.E. 2d at 604 (plaintiff "offers no cases to support her contention that the filed rate doctrine is applicable only in 'monopolistic or oligopolistic' industries").

insurance rates. In particular, the DOI has the authority to enforce the Insurance Code's prohibition on the use of unfair methods of competition and unfair or deceptive acts and practices in the business of insurance. 215 ILCS 5/423, 5/424, 5/429. The Code empowers the Director of the DOI "to examine and investigate into the affairs of every person engaged in the business of insurance in this State * * * in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice," (215 ILCS 5/425), as well as to hold hearings, issue cease and desist orders to persons found to be engaging in unfair practices, and enforce penalties for violations of those orders (215 ILCS 5/426, 5/427, 5/429, 5/431). The Director of the DOI also can institute court actions to enforce the Insurance Code, including actions seeking to enjoin persons from engaging in unfair or deceptive acts and practices. 215 ILCS 5/401(d)); 215 ILCS 5/429. Therefore, in the instant case, the DOI has the authority to disapprove ASI's rate on the grounds that the alleged nondisclosure is an unfair or deceptive act or practice; thus any revision of that rate by a court would infringe on the DOI's authority.

Plaintiff argues that the doctrine's nonjusticiability strand is not implicated because the DOI lacks the authority to set property insurance rates. But Illinois courts have concluded that the "distinction between 'the power to establish and fix rates and * * * the power to disapprove the rate'" is not relevant for purposes of the filed rate doctrine. *Horwitz*, 745 N.E. 2d at 605 (quoting *Anzinger*, 494 N.E.2d at 658). Because the DOI has the authority to disapprove insurance rates, allowing courts to second guess the reasonableness of such rates would undermine the DOI's authority.

Having determined that the filed rate doctrine is applicable in the insurance context, the Court now considers whether Plaintiff's claims against ASI effectively challenge the

reasonableness of ASI's insurance premium, and whether the relief Plaintiff seeks would require this Court to determine the appropriate premium. All of Plaintiff's claims against ASI are based on the allegation that the insurance premium charged to Plaintiff by ASI was unreasonable and unlawful because ASI failed to disclose that the premium contained fees to be paid to Wachovia. See Cmplt. ¶ 111, Count V (Plaintiff was "required to pay unreasonable and unnecessary charges for insurance as the kickbacks were not disclosed to them") *id.* ¶ 116, Count VI ("ASI * * * had a duty to disclose that the 'insurance premiums' * * * contained substantial kickbacks, but failed to do so"); *id.* ¶ 124, Count VII (ASI converted Plaintiff's property by collecting "'insurance premiums' contain[ing] substantial undisclosed kickbacks"); *id.* ¶ 130, Count VIII (ASI has been unjustly enriched by collection of insurance premiums "as it failed to disclose * * * the substantial undisclosed 'commission'"). Plaintiff seeks compensatory damages, disgorgement, restitution "in the amount of all 'insurance premiums' * * *, or alternatively, all kickbacks paid," and injunctive relief.

At least four courts of appeals have considered claims predicated on alleged failures to make certain disclosures in connection with a filed rate, and each has found such claims to be barred under the filed rate doctrine, at least to the extent that they sought monetary damages. See *Evanns v. AT&T Corp.*, 229 F.3d 837 (9th Cir. 2000) (filed rate doctrine bars claim that telecommunications carriers were obligated to disclose that they passed-through certain FCC-imposed fees to consumers where the fees were included in the carriers' filed rates); *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) (filed rate doctrine bars claims alleging that company fraudulently concealed its billing practice of rounding-up the length of customer's long-distance calls to the next full minute, where the company's FCC-approved tariff provided that customers would be billed in whole-minute increments); *Hill v. BellSouth Telecommunications, Inc.*, 364

F.3d 1308 (11th Cir. 2004) (concluding that filed rate doctrine was implicated by plaintiff's unfair trade practices and fraud and negligent misrepresentation claims, which challenged defendant's alleged practice of misleading customers about the filed tariffs it charged to customers); *Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424 (4th Cir. 2004) (filed rate doctrine bars unfair trade practices claim alleging that company failed to make certain disclosures in connection with its collection of certain fees as part of its tariff). As the *Hill* court explained, non-disclosure claims for damages implicate the purposes of the filed rate doctrine because – as noted above – an award of damages effectively allows the plaintiff to pay a different rate than other customers and requires the court to conclude that the filed rate was unreasonable. 364 F.3d at 1316-17. Consistent with those cases, the Court finds that Plaintiff's claims for damages, disgorgement, and restitution – all of which effectively seek a refund of a portion of the premiums paid by Plaintiff – are barred by the filed rate doctrine.

Plaintiff also seeks injunctive relief pursuant to the ICFA. See 815 ILCS 505/10a(c). Specifically, Plaintiff requests that Defendants be enjoined from engaging in the unlawful practices complained of in the complaint. In *Marcus*, the Second Circuit held that the plaintiff's claims for injunctive relief were not barred by the filed rate doctrine because an award of injunctive relief would not implicate the purposes of the filed rate doctrine. 138 F.3d at 62. In that case, the injunctive relief sought would not alter the filed rate or the rate paid by the plaintiff, but merely would require the company to publicize its practice of rounding up. *Id.* To the extent that Plaintiff simply seeks to compel ASI to disclose publicly what portion of its premiums constitute commissions and brokerage fees, its ICFA claim for injunctive relief is not barred by the filed rate doctrine. See *Green v. Peoples Energy Corp.*, 2003 WL 1712566, at *4

(N.D. Ill. March 28, 2003) (claims for injunctive relief not barred by filed rate doctrine where injunctive relief can be enforced without tampering with the filed rates).

### 2.     ICFA Claim

Because Plaintiff's ICFA claim for injunctive relief is not barred by the filed rate doctrine, the Court considers whether that claim survives ASI's motion to dismiss.  To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151, 160 (Ill. 2002).  In Count V, Plaintiff alleges that ASI's failure to disclose that the insurance premium contained commissions and brokerage fees violated the ICFA.

The omission or concealment of a material fact in the conduct of commerce constitutes consumer fraud. *Muehlbauer v. General Motors Corp*., 431 F. Supp. 2d 847, 867 (N.D. Ill. 2006); *Pappas v. Pella Corp.,* 844 N.E.2d 995, 998 (Ill. Ct. App. 1st Dist. 2006). A fact is material if the buyer of a product would have acted differently had he been aware of it, or if it concerns the type of information on which a buyer would be expected to rely in deciding whether to purchase the product. *Pappas*, 844 N.E.2d at 998.  A plaintiff is not required to allege that the defendant had a duty to disclose the omitted fact to the plaintiff in order to state a fraudulent concealment claim under the ICFA. *Muehlbauer*, 431 F. Supp. 2d at 867.

ASI contends that Plaintiff's ICFA claim fails because Plaintiff fails to allege actual deception, and therefore cannot establish the element of proximate causation.  The Illinois Supreme Court has held that, "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the

misrepresentation in order to establish the element of proximate causation." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (citing *Zekman v. Direct American Marketers, Inc.,* 695 N.E.2d 853 (Ill. 1998), *Oliveira v. Amoco Oil Co.,* 776 N.E.2d 151 (Ill. 2002), and *Shannon v. Boise Cascade Corp.,* 805 N.E.2d 213 (Ill. 2004)). However, as the *Muehlbauer* court explained, Illinois cases requiring actual deception involve affirmative misstatements, not omissions of material fact. 431 F. Supp. 2d at 868. A plaintiff is not required to plead actual deception to state an ICFA claim based on material omissions. See *Pappas*, 363 Ill.App.3d at 805 (distinguishing *Avery, Shannon, Oliveira,* and *Zekman* and holding that a plaintiff is not required to allege actual deception to state ICFA claim based on omission of material fact); *Galvan v. Northwestern Memorial Hosp.*, 888 N.E.2d 529, 540 (Ill. Ct. App. 1st Dist. 2008) ("in a case where the plaintiff alleges consumer fraud based on concealment of facts, a plaintiff need only allege he relied on the defendant's concealment by silence"). Therefore, Plaintiff's failure to assert actual deception is not fatal to her ICFA claim, which is premised on ASI's alleged failure to disclose that the insurance premiums contained commissions and fees.

However, the Court concludes that Plaintiff's ICFA claim against ASI nevertheless must be dismissed because Plaintiff cannot show that ASI proximately caused the injury that Plaintiff claims to have sustained. According to the complaint, had Plaintiff known that the cost of insurance was less than the premium charged by ASI, she and the other purported Class members would not have paid the insurance premium and "either could have attempted to negotiate a better overall price for the insurance or attempted to purchase their insurance elsewhere." Cmplt. ¶¶ 50-51. However, the documents properly before the Court on ASI's motion to dismiss establish that Plaintiff was given the precise information that she claims would have enabled her to avoid damages – namely, that the cost of the ASI insurance was less than the premium

charged. In particular, the July 18, 2008 letter from Wachovia to Plaintiff stated that the cost of the ASI policy "may include compensation to the Insurer and Wachovia Mortgage." Ex. F to [31].[8] Therefore, Plaintiff's ICFA claim must be dismissed. See *Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 589 (7th Cir. 2001) (to state ICFA claim "the plaintiff must show that the defendant's deception has caused his damages").

## IV. Conclusion

For the reasons stated above, both Wachovia's motion to dismiss [29] and ASI's motion to dismiss [27] are granted.

Dated: March 30, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[8] While the letter is attached to Wachovia's brief, it is properly before the Court on ASI's motion to dismiss as well, because ASI adopted Wachovia's motion to dismiss and supporting memorandum in its own motion to dismiss. See [27] at n.2.