**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARTHA SCHILKE, both individually and as a representative of all other persons similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Case No. 09-cv-1363 |
| | ) |
| WACHOVIA MORTGAGE, FSB f/k/a World Savings Bank, FSB, and AMERICAN SECURITY INSURANCE, INC., | )      Judge Robert M. Dow, Jr. ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion for leave to file a third amended complaint [80]. For the reasons set forth below, Plaintiff's motion for leave to file a third amended complaint [80] is denied and the claims against Defendants Wachovia Mortgage FSB and American Security Insurance, Inc. are dismissed with prejudice.

**I.**      **Background**[1]

     **A.**      **Procedural Background**

This putative class action arises out of a home mortgage loan that Plaintiff Martha Schilke obtained from World Savings Bank FSB, now known as Wachovia Mortgage FSB ("Wachovia"), and the subsequent purchase of hazard insurance for the mortgaged property by Wachovia from American Security Insurance Company ("ASI"). On March 29, 2009, Plaintiff filed a first amended class action complaint alleging various state law claims against Defendants Wachovia and ASI based on the premiums that she was charged for the lender placed insurance.

---

[1] For purposes of Plaintiff's motion to amend, the Court assumes as true all well-pleaded allegations set forth in the proposed third amended complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Wachovia and ASI both filed motions to dismiss, which the Court granted on March 30, 2010. In the opinion, the Court concluded that Plaintiff's claims against Defendant Wachovia were expressly preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461 *et seq.*, and the implementing regulations promulgated by the Office of Thrift Supervision ("OTS"), 12 C.F.R. §§ 560.1 *et seq.* The Court further concluded that all of Plaintiff's claims against Defendant American Security Insurance Company ("ASI")—apart from her claim for injunctive relief under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, *et seq.*—were barred by the filed rate doctrine. The Court determined that Plaintiff's ICFA claim against ASI failed because Plaintiff was unable to establish the element of proximate causation.

Plaintiff then filed a motion for leave to file a second amended complaint pursuant to Federal Rules of Civil Procedure 15(a)(2) and to vacate the judgment pursuant to Rule 60(b)(6) and a motion to alter or amend the judgment pursuant to Rule 59(e). In December 2010, the Court granted Plaintiff's motion to alter or amend the judgment, vacating the judgment entered on March 30, 2010, and reinstating Plaintiff's claim for injunctive relief against ASI under the ICFA; however, the Court denied Plaintiff's motion for leave to file a second amended complaint. The Court advised Plaintiff that if she believed she could cure the deficiencies noted in the Court's two lengthy opinions, she had thirty days in which to file a motion for leave to file another proposed amended complaint.

On February 10, 2011, Plaintiff filed a motion for leave to file third amended complaint, to which both Defendants responded. Defendant ASI attached exhibits to their response brief, maintaining that two of the exhibits establish the futility of the amendment based on a lack of jurisdiction over a newly proposed Defendant, Assurant, Inc. Plaintiff responded with a motion

to strike ASI's exhibits [88] as well as a motion for sanctions [93]. Plaintiff also seeks a stay of any decision regarding personal jurisdiction as to Assurant until Plaintiff has completed "jurisdictional" discovery. Finally, Plaintiff filed a motion to cite additional authority [113].

**B.    Factual Background**

In March 2006, Schilke entered into a home mortgage loan with World Savings Bank FSB, which is now Wachovia. The mortgage agreement required Schilke to maintain hazard insurance for the mortgaged property. The mortgage further provided that if Schilke failed to maintain hazard insurance, Wachovia could "do and pay for whatever it deems reasonable or appropriate to protect [its] rights in the Property," including "purchasing [the] insurance required." The mortgage expressly advised Schilke that insurance purchased by Wachovia "may cost more and provide less coverage than the insurance [plaintiff] might purchase."

At closing, Schilke also signed a Notice of Fire/Hazard Insurance Requirement which further explained her insurance obligations. It provided that if Wachovia did not receive evidence of insurance coverage, "we may at our sole option, obtain an insurance policy for our benefit only, which would not protect your interest in the property or the contents." This disclosure also stated that in the course of purchasing such replacement insurance, Wachovia "may assess a processing fee and our affiliated insurance agent could collect a commission from the insurer. The cost of such insurance could be at least two to five times greater and provide you with less protection than insurance you could purchase directly from an insurer."

Schilke contracted to purchase hazard insurance for the mortgaged property through Grange Mutual Insurance on January 1, 2008. Schilke paid a premium of $841 for the Grange insurance policy, which had a $500 deductible.

On May 9, 2008, Wachovia sent Schilke a letter requesting insurance information for the property. The letter requested proof of insurance within 14 days, explained that "[f]ailure to provide this information may result in a policy being purchased by us at your expense to protect our interest," and advised Schilke that the policy Wachovia would purchase would have a premium of $2,034. The letter advised that Schilke's monthly mortgage payment would be adjusted to cover the cost of the insurance and disclosed that the "premium may include compensation to the insurer and Wachovia Mortgage for tracking customers' compliance with Wachovia Mortgage Insurance requirements." *Id.*

Schilke did not respond to Wachovia's May 9, 2008 letter. On June 12, 2008, Wachovia sent a second notice requesting evidence of insurance and informing Schilke that it had placed a temporary insurance policy on the property. The June 12 notice contained the same disclosures as the May 9 notice and also disclosed that the loan premium was higher than most other policies because "the American Security Insurance Company will insure your property automatically without inspecting it." Again, Plaintiff did not respond or notify Wachovia that she had secured property insurance.

On July 18, 2008, Wachovia sent Schilke a letter notifying her that it had purchased insurance from ASI with an annual premium of $2,034.[2] The letter advised Schilke that "[t]he cost of this policy is probably greater than the cost of comparable coverage obtained through your own insurance agency" and that "[t]he costs may include compensation to the Insurer and Wachovia Mortgage." The ASI policy had an effective date of April 8, 2008, the date on which

---

[2] The Court will consider the May 9, June 12, and June 18 letters, despite the fact that not all were attached to Plaintiff's complaint, because they have been referred to in different versions of Plaintiff's complaints and are central to Plaintiff's claims (which are based in part on the allegation that Defendants misrepresented the nature of the insurance premium). There has been no objection to the authenticity of the letters.

Plaintiff's private insurance had lapsed. The notice advised Schilke that she still could obtain her own coverage, and that if she did so, Wachovia would return to her any premium paid to ASI that proved to be unnecessary.

The ASI policy covered Schilke for a smaller loss than did her previous policy. Schilke alleges that the insurance premium that she was charged for the ASI policy included undisclosed fees – which Schilke terms "kickbacks" – paid to Defendants for the placement, maintenance, and servicing of the insurance. Schilke alleges that she "could not know that the amounts being billed as 'insurance premiums' were not, in fact, the true cost of the actual insurance coverage." Schilke also complains that Defendants knew that they were charging Plaintiff for "backdated insurance" as they knew that no loss had been claimed since Plaintiff let her private insurance lapse.

Schilke's proposed third amended complaint organizes her claims into three separate groups: (1) claims which only seek injunctive relief prohibiting alleged payments from ASI to Wachovia (Counts 1-4), (2) claims which seek damages for such alleged payments (Counts 5-12), and (3) claims which seeks damages for the "backdating" of the ASI insurance (Counts 13-21). With respect to the injunctive relief claims, in her prior complaints, Plaintiff alleged that Wachovia violated the Illinois Consumer Fraud Act (the "ICFA"). In the most recent complaint, Plaintiff has dropped that claim as to Wachovia, and now asserts that claim only against ASI, and seeks only injunctive relief, and not damages. However, Plaintiff now alleges that Wachovia assisted ASI in committing consumer fraud, and asserts three additional claims for aiding and abetting (Count II), acting "in concert" (Count III), and conspiracy (Count IV). These claims are included in the section entitled "Counts for Injunctive Relief," although Plaintiff has not identified what injunctive relief, if any, she is seeking against Wachovia.

Counts V – XII seek damages for the alleged "kickbacks" that were paid in connection with the lender-placed insurance. Plaintiff brings claims against Wachovia for conversion (Count V), breach of contract (Count VI), unjust enrichment in quasi contract (VII), and unjust enrichment in tort (VIII); the remainder of the counts are against ASI for aiding and abetting (Count IX), acting "in concert" (Count X), conspiracy (Count XI), and intentional interference (Count XII). Plaintiff's breach of contract claim alleges that, because the mortgage does not mention payment of any amounts to Wachovia, it was a breach of contract for Wachovia to receive such payments. See Third Amended Complaint ("TAC") ¶¶ 186-88. Plaintiff acknowledges that the Court previously rejected this view of the contract. See TAC ¶ 187 (asserting allegation "[d]espite this Honorable Court's December 14, 2010 ruling").

In Counts XIII through XXI, Plaintiff alleges that Defendants acted improperly by purchasing "backdated" insurance coverage. Plaintiff is not alleging that Wachovia purchased insurance for a period that overlapped with any time during which Plaintiff's private insurance was in effect. Indeed, the documents show that the effective date of the ASI policy (April 8, 2008) was the same date that her own private policy lapsed. As a result, what Plaintiff alleges is that Wachovia lacked the right to ensure continuous coverage during the period that it allowed her the opportunity to demonstrate that Wachovia's replacement insurance was unnecessary. The specific claims asserted against Wachovia are conversion (Count XIII), breach of contract (Count XIV), unjust enrichment in quasi contract (XV), and unjust enrichment in tort (XVI). The remaining claims are against ASI for aiding and abetting (Count XVII), acting "in concert" (Count XVIII), conspiracy (Count XIX), and intentional interference (Count XX). Finally, Plaintiff brings a cause of action entitled "liability" (Count XXI) against Assurant and alleges that Assurant is liable for each of the counts directed at ASI.

## II.     Legal Standard on a Motion to Amend

It is well-settled that a district court can deny a motion for leave to amend when the amended pleading would be futile. *Bethany Phamacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).  An amended complaint is considered to be futile if it could not withstand a motion to dismiss.  See *Smart v. Local 702 Intern. Broth. Of Elec. Workers*, 562 F.3d 798, 811 (7th Cir. 2009).  To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ----, ---
-, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.

## III.     Analysis

### A.     Claims Against Wachovia

When considering Plaintiff's previous request for leave to amend, the Court concluded

that permitting leave to amend as to Wachovia would be futile because

> [a]s explained in the Court's prior opinion [Doc. No. 51], Plaintiff's state law
> claims are preempted if allowing those claims to go forward would effectively
> regulate the lending activities expressly contemplated by 12 C.F.R. § 560.2(b).
> Section 560.2(b) provides that state laws purporting to impose requirements
> regarding certain types of activities (enumerated in subsections (1)-(13) of the
> provision) are preempted by OTS regulations pursuant to HOLA.  12 C.F.R. §
> 560.2(b).  The ICFA claims against Wachovia in Plaintiff's proposed second
> amended complaint—even if based on conduct now described as "unfair" as well
> as "deceptive"—would affect Wachovia's "ability * * * to require or obtain
> private mortgage insurance" (§ 560.2(b)(2)); its imposition of loan-related fees (§
> 560.2(b)(5)); and its disclosure of loan terms (§ 560.2(b)(9)).

As demonstrated below, Plaintiff's latest effort to amend fails to cure the fundamental defects

and also fails to address the Court's repeated explanations as to why the claims are deficient.

Plaintiff persists in referring to the payments that Wachovia receives from ASI in

connection with the purchase of replacement insurance as "kickbacks."  The Court previously

concluded that such allegations are preempted.  The Court declines to again repeat the history of

HOLA and the preemption principles found in the Court's two prior twenty-one page opinions.

Rather, the Court focuses on the Seventh Circuit's decision in *Ocwen*, which clearly articulates

several considerations for district courts in performing the preemption analysis.   *In re Ocwen*

*Loan Servicing, LLC*, 491 F.3d 638, 641-42 (7th Cir. 2007).

In *Ocwen*, the Seventh Circuit interpreted § 560.2 as giving the OTS "exclusive authority

to regulate the savings and loan industry in the sense of fixing fees (including penalties), setting

licensing requirements, prescribing certain terms in mortgages, establishing requirements for

disclosure of credit information to customers, and setting standards for processing and servicing

mortgages," but "no power to adjudicate disputes between the S & Ls and their customers." 491 F.3d at 643. The Seventh Circuit also concluded that § 560.2 "does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *Id.* For example, the court explained that if an S & L were to sign a mortgage agreement with a homeowner and charge the homeowner a higher annual interest rate than that specified in the mortgage agreement, § 560.2 would not preempt a breach of contract claim by the homeowner. *Id.* at 643-44. Similarly, the court opined that § 560.2 would not preempt a mortgagor's fraud claim where the mortgagee fraudulently represents to the mortgagor that it will forgive a default, and then foreclosed. *Id.* at 644.

However, in analyzing the plaintiff's claim that defendant "force plac[ed] insurance on properties that already have insurance coverage," the Seventh Circuit in *Ocwen* concluded there was no indication that this practice involved either a breach of contract or misrepresentation and thus "it is apparent that prohibiting [this practice] could interfere with federal regulation of disclosure, fees, and credit terms." *Ocwen*, 491 F.3d at 646. Here, Plaintiff does not even allege that the insurance was "force placed" on a property that already had insurance coverage; instead, the allegation is merely that Wachovia secured insurance when Plaintiff failed to maintain her own.

In another instance, the Seventh Circuit stated that a claim that Ocwen charged "more for replacement hazard insurance than what the insurance cost * * * may well be preempted." *Ocwen*, 491 F.3d at 647. The court indicated that it would be a different scenario if the loan contract forbade the mortgagee to charge more than the cost of the insurance. Here, Plaintiff has failed to point to any such language in her loan documents. Rather, the loan documents explicitly state that Wachovia may "do and pay for whatever it deems reasonable or appropriate

to protect [its] rights in the Property," including "purchasing [the] insurance required" and that the insurance purchased by Wachovia "may cost more and provide less coverage than the insurance [plaintiff] might purchase." Furthermore, the insurance notice that Schilke signed at closing provided that if Wachovia did not receive evidence of insurance coverage, it could obtain an insurance policy for its benefit only, and that in the course of purchasing such replacement insurance, Wachovia "may assess a processing fee and our affiliated insurance agent could collect a commission from the insurer. The cost of such insurance could be at least two to five times greater and provide you with less protection than insurance you could purchase directly from an insurer." Thus, rather than forbidding the mortgagee to charge more than the cost of the insurance, Plaintiff should have been well aware of what would happen if she failed to maintain her own coverage. There was no breach or misrepresentation. In fact, accepting the allegations as true, it appears that Wachovia did exactly what it said it would do if Plaintiff failed to maintain her mortgage insurance. To the extent that Plaintiff has a grievance, it may be that HOLA allows mortgagees to include such terms in mortgage-related contracts. But Plaintiff has not pointed to any law forbidding them, and if she thought the terms that would apply in the event that she did not maintain her own mortgage insurance were too onerous or one-sided, she was free to decline Wachovia's offer and seek better terms elsewhere in the market.

Looking at the specific conduct being charged rather than the labels attached by Plaintiff, as *Ocwen* instructs, the Court previously determined that the conduct alleged falls within the scope of OTS regulation. *Ocwen*, 491 F.3d at 646 (explaining that whether claims are preempted turns on "the specific conduct being charged"); see also *Prince-Servance v. BankUnited*, *FSB*, 2007 WL 3254432, at *5 (N.D. Ill. Nov. 1, 2007) (rejecting the argument that § 560.2 does not preempt laws of general applicability). In her latest complaint, Plaintiff's state law claims

against Wachovia remain premised on the allegation that Wachovia failed to disclose that the insurance premium that Plaintiff was charged for the ASI policy included fees paid to Wachovia for the placement, maintenance, and servicing of the insurance. Thus, as before, Plaintiff is seeking to use state laws to impose requirements on Wachovia's "ability * * * to require or obtain private mortgage insurance," 12 C.F.R. § 560.2(b)(2); its imposition of loan-related fees, *id.* § 560.2(b)(5); and its disclosure of loan terms, *id.* § 560.2(b)(9). Because each of these areas is within the exclusive purview of the federal laws, Plaintiff's state law claims are preempted to the extent that they are based on Wachovia's alleged failure to disclose the nature of the insurance premiums.

In addition to alleging insufficient disclosures, the third amended complaint continues to allege that Wachovia made false representations—specifically, that the amount Plaintiff was charged for the ASI insurance was the cost of the insurance, when in fact Plaintiff also was charged for additional fees. Once again, the Court already has addressed this argument in its prior opinions. To the extent that Plaintiff's claims are based on alleged false representations by Wachovia, they may not be preempted. See *Ocwen*, 491 F.3d at 647 (common law fraud claim alleging falsely representations "probably is not preempted"). However, Plaintiff's claims nevertheless fail because Plaintiff has not identified an actionable misrepresentation. Contrary to Plaintiff's allegations, Wachovia did not represent that the amount Plaintiff was charged for the ASI policy was the actual cost of the insurance coverage. The mortgage agreement between Plaintiff and Wachovia provided that if Plaintiff failed to maintain hazard insurance, Wachovia could "do and pay for whatever it deems reasonable or appropriate to protect [its] rights in the Property," including "purchasing [the] insurance required." The loan documents also include the following language: Wachovia "may assess a processing fee and our affiliated insurance agent

could collect a commission from the insurer."  Then, to further clarify the terms of the loan documents, in a letter dated May 9, 2008, Wachovia informed Plaintiff that "[f]ailure to provide [proof of insurance] may result in a policy being purchased by us at your expense to protect our interest," and that the "premium may include compensation to the insurer and Wachovia Mortgage."  Finally, the July 18, 2008 letter notifying Plaintiff that Wachovia had purchased insurance from ASI stated that the cost of this policy "may include compensation to the Insurer and Wachovia Mortgage."

The "backdating" allegations found in the proposed third amended complaint, although technically new, do not change the posture of this case.  Ensuring that a property is adequately insured is a core part of a bank's lending activity.  Try as she has over the course of four complaints, Plaintiff does not claim that Wachovia has done anything other than what it was entitled to do under the contract:  ensure that its interest in the property was protected with continuous, adequate insurance coverage.  That was the conduct at issue before, and it remains the conduct at issue now.  In her reply brief, Plaintiff argues that "[e]ven if Plaintiff breached her agreement by not maintaining insurance on her home, Wachovia doesn't get to make up its own remedy by backdating and charging Plaintiff for illusory coverage * * *."  But, setting aside the superfluous language, that is exactly what Wachovia expressly reserved the right to do pursuant to the terms of the agreement that Plaintiff signed.  Furthermore, before charging her for the continuous coverage that Wachovia's loan required, Wachovia chose to give Plaintiff several opportunities to prove that she had purchased her own coverage.  Whether one calls that manner of protecting Wachovia's interest in the property "backdating" or just an effort at reasonable customer relations is of no moment.  Wachovia's contractual right was to have continuous coverage on the property.  Wachovia was not under any obligation to determine whether the

property had suffered any damage from the date that Plaintiff had allowed her coverage to lapse. In fact, Wachovia explained to Plaintiff that the cost of replacement insurance is higher in part because the policy is issued without any inspection of the property. The policy date is April 8, 2008—the same day that Plaintiff's private insurance policy expired—and there are no allegations that Wachovia's coverage overlapped with Plaintiff's. Simply put, Plaintiff's "backdating" allegations ignore her contractual duty in her mortgage agreement to maintain continuous, uninterrupted insurance on the property, which serves as security for the loan, and also ignore the terms authorizing Plaintiff's lender or servicer to "do and pay for whatever *it deems reasonable or appropriate* to protect the Lenders's rights in the Property." (Emphasis added).

At the end of the day, even putting aside the Court's determination that Plaintiff's claims are preempted, the fundamental problem with Plaintiff's allegations is that they are contradicted by the documents that Plaintiff signed. The gravamen of Plaintiff's claims is that Wachovia somehow "knowingly or substantially assisted ASI in violating the Act" by "not disclosing the kickbacks alleged in Count I." See TAC ¶¶ 158, 164, 172. The allegations are undercut by the documents showing that Wachovia *did* disclose the payment that Plaintiff refers to as a kickback, as this Court noted in its first opinion. See DE 51 at 12 (rejecting the claim that Wachovia made a false statement). Moreover, the third amended complaint—like the original, first, and second amended complaints before it—does not point to any specific term of the contract that Wachovia allegedly breached. In fact, the contract specifically discloses (1) that Wachovia would purchase replacement insurance if Plaintiff failed to maintain insurance herself, (2) that Plaintiff would be charged for that insurance, and (3) that the cost of the insurance likely would be higher than if Plaintiff obtained private insurance and would include compensation to Wachovia. Wachovia's

conduct in purchasing the replacement insurance from ASI thus was entirely consistent with the contract.

In sum, Plaintiff's claims fail not only because Wachovia's actions are specified in the terms of the loan and thus preempted, but also because Plaintiff has not identified an actionable misrepresentation or demonstrated that Wachovia breached the terms of the contract. If anything, Wachovia honored the agreement when it did exactly what it told Plaintiff it would do—purchase an insurance policy at Plaintiff's expense when Plaintiff failed to maintain its obligations under the agreement by maintaining insurance on the property. The claims against Wachovia are dismissed with prejudice.[3]

### B. Claims Against ASI

In accordance with the Illinois Administrative Code, which requires that insurance rates be filed with the Illinois Department of Insurance ("DOI"), ASI filed the premium rates for the policy purchased for Plaintiff by Wachovia with the DOI. Ill. Admin. Code tit. 50, §§ 754.10, 754.40.[4] ASI's filings set forth the formula used to calculate Plaintiff's premium, and explain that "commissions and brokerage fees" are part of the rate calculation. Throughout this case,

---

[3] Plaintiff filed a motion to cite as additional authority *Fletcher v. OneWest Bank*, 2011 WL 2648606 (N.D. Ill. June 30, 2011). The Court grants Plaintiff's request and has reviewed *Fletcher*; however, the *Fletcher* decision does not change the Court's conclusions in the present case. First, *Fletcher* did not address HOLA, but rather the federal government's Home Affordable Modification Program ("HAMP"). But more importantly, *Fletcher* merely acknowledges what this Court consistently has recognized—namely, that HOLA does not preempt "basic state common-law type remedies." The disagreement with Plaintiff's argument comes not in the statement of this principle but in its application—Plaintiff's causes of action do not state a claim for any common-law type remedies. Although labeled as such, in substance Plaintiff's claims take issue with Defendants' ability to require or obtain mortgage insurance, its imposition of loan-related fees, and its disclosure of loan terms, all areas with the exclusive purview of HOLA. See, *e.g.*, *Ocwen*, 491 F.3d at 641-42. And to the extent that any part of the complaint is outside of the scope of that preemption, Plaintiff has not identified an actionable misrepresentation, a breach of contract, or any other colorable, non-preempted claim.

[4] The Court takes judicial notice of ASI's filings with the DOI, which ASI has submitted to the Court with its motion to dismiss. See Exs. A-C to [27]; *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (on a motion to dismiss, a court may consider judicially noticed documents, including documents contained in the public record).

ASI has maintained that all of Plaintiff's claims against it are barred by the filed rate doctrine, which forbids courts from invalidating or modifying rates that have been filed with regulatory agencies. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000); *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001).

Once again, the Court declines to repeat the history of the filed rate doctrine that can be found in the Court's two prior twenty-one page opinions. To summarize, the filed rate doctrine bars courts from altering filed rates, and, by extension, prohibits a court from awarding a plaintiff damages based on the difference between a filed rate and an allegedly lawful rate. The Court also declines to revisit Plaintiff's argument that the filed rate doctrine should not be applied in the context of property insurance because doing so will not serve the purposes of the doctrine. Numerous courts have held, contrary to Plaintiff's contention, that the filed rate doctrine applies to the insurance industry. See *Richardson v. Standard Guar. Ins. Co.*, 853 A.2d 955, 964 (N.J. Super. A.D. 2004) (holding that the filed rate doctrine applies to the insurance industry, and noting "the considerable weight of authority from other jurisdictions that have applied the filed rate doctrine to ratemaking in the insurance industry"); *Schermer v. State Farm Fire and Cas. Co.*, 702 N.W.2d 898, 907 (Minn. App. Ct. 2005) (collecting cases applying the filed rate doctrine to the insurance industry). Similarly, Illinois courts have applied the filed rate doctrine in the context of insurance premiums. See *Anzinger v. Illinois State Medical Inter-Insurance Exchange*, 494 N.E.2d 655 (Ill. App. Ct. 1st Dist. 1986) (filed rate doctrine barred physicians' suit to recover premiums paid to insurance carrier before carrier's medical malpractice rates were held to be excessive); *Horwitz v. Bankers Life & Cas. Co.*, 745 N.E. 2d 591 (Ill. App. Ct. 1st Dist. 2001) (filed rate doctrine barred insured's breach of contract and ICFA claims against insurer challenging the manner in which the insurer calculated health insurance premiums).

Having determined that the filed rate doctrine is applicable in the insurance context, the Court previously considered whether Plaintiff's claims against ASI effectively challenge the reasonableness of ASI's insurance premium and whether the relief that Plaintiff seeks would require this Court to determine the appropriate premium. In the latest proposed complaint, all of Plaintiff's claims against ASI continue to rest on the allegation that the insurance premium charged to Plaintiff by ASI was unreasonable and unlawful because ASI failed to disclose that the premium contained fees to be paid to Wachovia. As previously noted, at least four courts of appeals have considered claims predicated on alleged failures to make certain disclosures in connection with a filed rate, and each has found such claims to be barred under the filed rate doctrine, at least to the extent that they sought monetary damages. See *Evanns v. AT&T Corp.*, 229 F.3d 837 (9th Cir. 2000) (filed rate doctrine bars claim that telecommunications carriers were obligated to disclose that they passed-through certain FCC-imposed fees to consumers where the fees were included in the carriers' filed rates); *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) (filed rate doctrine bars claims alleging that company fraudulently concealed its billing practice of rounding-up the length of customer's long-distance calls to the next full minute, where the company's FCC-approved tariff provided that customers would be billed in whole-minute increments); *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308 (11th Cir. 2004) (concluding that filed rate doctrine was implicated by plaintiff's unfair trade practices and fraud and negligent misrepresentation claims, which challenged defendant's alleged practice of misleading customers about the filed tariffs it charged to customers); *Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424 (4th Cir. 2004) (filed rate doctrine bars unfair trade practices claim alleging that company failed to make certain disclosures in connection with its collection of certain fees as part of its tariff). As the *Hill* court explained, non-disclosure claims

for damages implicate the purposes of the filed rate doctrine because an award of damages effectively allows the plaintiff to pay a different rate than other customers and requires the court to conclude that the filed rate was unreasonable. 364 F.3d at 1316-17. Consistent with those cases, this Court found that Plaintiff's claims for damages, disgorgement, and restitution—all of which effectively seek a refund of a portion of the premiums paid by Plaintiff—to be barred by the filed rate doctrine. Plaintiff's proposed third amended complaint makes no attempt to "cure" the "filed rate deficiencies" that led to the dismissal of all claims (except, as discussed below, for the lone possibility of an ICFA injunctive relief). The Court's conclusion regarding the filed rate doctrine's applicability in this case, articulated thoroughly in its two prior opinions, remains unchanged after Plaintiff's latest filings.

Plaintiff also sought, and continues to seek, injunctive relief pursuant to the ICFA. See 815 ILCS 505/10a(c). In *Marcus*, the Second Circuit held that the plaintiff's claims for injunctive relief were not barred by the filed rate doctrine because an award of injunctive relief would not implicate the purposes of the filed rate doctrine. 138 F.3d at 62. In that case, the injunctive relief sought would not have altered the filed rate or the rate paid by the plaintiff, but merely would have required the company to publicize its practice of rounding up. *Id.* To the extent that Plaintiff here simply seeks to compel ASI to disclose publicly what portion of its premiums constitute commissions and brokerage fees, its ICFA claim for injunctive relief is not barred by the filed rate doctrine. See *Green v. Peoples Energy Corp.*, 2003 WL 1712566, at *4 (N.D. Ill. March 28, 2003) (claims for injunctive relief not barred by filed rate doctrine where injunctive relief can be enforced without tampering with the filed rates).

Even though the Court determined in its prior opinion that Plaintiff's ICFA claim for injunctive relief was not barred by the filed rate doctrine, the claim as articulated in the proposed

third amended complaint still must survive a motion to dismiss. To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Plaintiff continues to allege that ASI's failure to disclose that the insurance premium contained commissions and brokerage fees violated the ICFA.

Plaintiff's ICFA claim against ASI fails because Plaintiff cannot show that ASI proximately caused the injury that Plaintiff claims to have sustained. According to Plaintiff's allegations, had Plaintiff known that the cost of insurance was less than the premium charged by ASI, she and the other purported class members would not have paid the insurance premium and either could have attempted to negotiate a better overall price for the insurance or attempted to purchase their insurance elsewhere. However, the documents properly before the Court establish that Plaintiff was given the precise information that she claims would have enabled her to avoid damages—namely, that the cost of the ASI insurance was less than the premium charged. The mortgage provided that if Plaintiff failed to maintain hazard insurance, Wachovia could "do and pay for whatever it deems reasonable or appropriate to protect [its] rights in the Property," including "purchasing [the] insurance required," and expressly advised Plaintiff that insurance purchased by Wachovia "may cost more and provide less coverage than the insurance [plaintiff] might purchase." Furthermore, the "Notice of Fire/Hazard Insurance Requirement" that Plaintiff signed stated that in the course of purchasing such replacement insurance, Wachovia "may assess a processing fee and our affiliated insurance agent could collect a commission from the insurer. The cost of such insurance could be at least two to five times greater and provide you with less

protection than insurance you could purchase directly from an insurer." Also, the July 18, 2008 letter from Wachovia to Plaintiff stated that the cost of the ASI policy "may include compensation to the Insurer and Wachovia Mortgage." And finally, ASI disclosed its commissions as part of its rate filings with the DOI. As set forth in the Court's prior opinion, "ASI filed the premium rates for the policy purchased for Plaintiff by Wachovia with the DOI" and "ASI's filings set forth the formula used to calculate Plaintiff's premium, and explain that 'commissions and brokerage fees' are part of the rate calculation." March 2010 Order at 12-13. Based on these disclosures, which were not deceptive but rather accurate, Plaintiff's ICFA claim fails as a matter of law. See *Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 589 (7th Cir. 2001) (to state ICFA claim "the plaintiff must show that the defendant's deception has caused his damages").

In its December 2010 Order, the Court noted that Plaintiff also claimed that "any payment of commissions or kickbacks from ASI to Wachovia constitutes an unfair trade practice under the ICFA, regardless of whether the payments to Wachovia were disclosed." As pointed out by ASI in its response brief however, this allegation fails to provide a legitimate basis for the ICFA injunctive relief claim. The Court's prior orders recognized that Plaintiff was notified that the premiums for her ASI policy may include compensation to Wachovia. The Court also found that "Wachovia is not an unlicensed insurance agent or broker, but rather a savings institution that engaged in an LPI transaction," and that ASI had disclosed its commissions as part of its rate filings with the DOI. Plaintiff's contention that any payment of a "kickback" constitutes an unfair practice rests on the allegation that 215 ILCS 5/500-80 "prohibits kickbacks to unlicensed insurance agents or brokers." However, because the Court has found that Wachovia was a licensed agent, Plaintiff's claims based on this contention must fail. Moreover, Plaintiff is charged with constructive knowledge of the filed rate and the elements that make up that rate.

*See, e.g., Marcus*, 138 F.3d at 60, 63; *Olympia Holding*, 88 F.3d at 956; *Ropiy v. Hernandez*, 842 N.E.2d 747, 754-55, (Ill. App. Ct. 2005) (since plaintiff had "constructive knowledge" of public filings, "[w]e conclude the trial court did not err in dismissing his * * * action."); *Renth v. Krausz*, 579 N.E.2d 11, 13 (Ill. App. Ct. 1991) ("when a right to sue is based upon a statute or a public record, Illinois courts have charged a party with constructive knowledge"); *Payne v. Williams*, 414 N.E.2d 836, 842 (Ill. App. Ct. 1980) ("public records surrounding the bank's application for tax deeds, including * * * affidavits in support of such application, would constitute constructive notice to [plaintiff]").  Accordingly, neither the alleged lack of disclosure nor the payment of commission itself constitutes a deceptive or unfair act by ASI.[5]

## C.     Claims Against Assurant

As set forth above, the Court concludes that the claims against ASI would not withstand a motion to dismiss.  And because the proposed claim against Assurant, Inc. is premised solely on

---

[5]    Plaintiff's ICFA claim also cannot withstand a motion to dismiss because she cannot establish that she suffered actual damages. It is well established under Illinois law that private rights of action for injunctive relief under the ICFA require damages. As the court held in *Duran v. Leslie Oldsmobile*, "although a *violation* of the Consumer Fraud Act may occur in the absence of damages, *a private cause of action* does not arise absent a showing of both a violation and resultant damages. [There is] a distinction between a violation absent damages, which the Attorney General may prosecute and a violation causing damages, which either the Attorney General or a private party may pursue."  594 N.E.2d 1355, 1361-62 (Ill. App. Ct. 1992) (italics in original) (internal citations omitted).  Moreover, as explained in *Tarin v. Pellonari*, "[t]he Consumer Fraud Act provides a private cause of action in cases only where the plaintiff can show that he suffered damage as a result of the unlawful conduct proscribed by the statute." 625 N.E.2d 739, 747 (Ill. App. Ct. 1993) (citation omitted) (dismissing ICFA claim where plaintiff did not demonstrate any damages resulting from defendants' conduct); see also *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995) ("[A] private cause of action under the Consumer Fraud Act cannot arise absent a showing of both a violation of the Act and resultant damages"); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd USA*, 893 N.E.2d 981, 999 (Ill. App. Ct. 2008) (holding that plaintiff's failure to prove actual damages precluded injunctive relief under the ICFA); *Ewing v. Tilden Commercial Alliance, Inc.*, 1995 WL 239375, at *3 (N.D. Ill. Apr. 21, 1995) (dismissing private cause of action for violation of ICFA where plaintiff did not suffer damages).  Here, as this Court twice has ruled, Plaintiff has not suffered any damages because she paid exactly the filed rate and her damages claims are barred by the filed rate doctrine.  Because Plaintiff has suffered no damages, her ICFA injunctive relief claim cannot withstand a motion to dismiss.  See also *Taffet v. S. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (dismissing RICO action because plaintiff "suffered no legally cognizable injury by virtue of paying the filed rate").

the defective claims against ASI, that claim likewise cannot withstand a motion to dismiss. Accordingly, the Court denies leave to add Assurant as a party. The Court need not delve into the heavily-contested issue of whether the Court has personal jurisdiction over Assurant, and thus declines to do so. Plaintiff's numerous filings pertaining to this issue—the portion of the motion to strike ASI's exhibits related to jurisdiction [88][6], the motion for sanctions [93], and the motion to stay [102]—are denied as moot.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for leave to file a third amended complaint [80] is denied. The Court denies Plaintiff leave to add Assurant, Inc. as a defendant, and the claims asserted against Defendants Wachovia and ASI are dismissed with prejudice. Plaintiff's motion for leave to cite additional authority [113] is granted, Plaintiff's motion to strike ASI's exhibits [88] is granted in part and denied in part, and Plaintiff's motions for sanctions [93] and to stay [102] are denied as moot. Plaintiff's notice of motion date of September 29, 2011, is stricken and no appearances are necessary on that date. Final judgment will be entered for Defendants and against Plaintiff, thereby closing the case.

Dated: September 28, 2011                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge

---

[6] To the extent that Plaintiff's motion to strike seeks to strike Exhibit A—a two-page document identifying, for the Court's benefit, the similar allegations contained in the four complaints that Plaintiff has proposed or filed to date in this case—the Court grants that portion of the motion. Although Exhibit A simply identifies the allegations of the proposed third amended complaint that are exactly (or virtually) the same as the allegations of the prior three complaints, the document was unnecessary as the Court easily could see the similarities between the allegations in all four complaints. To the extent that Plaintiff's motion seeks to strike Exhibit B—a one-page document that Plaintiff attached to her first amended complaint and is expressly referenced twice in the proposed third amended complaint—her motion is denied.